IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ANDROGEL ANTITRUST LITIGATION (NO. II) | MDL DOCKET NO. 2084 ALL CASES |
| | 1:09-MD-2084-TWT |
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| v. | CIVIL ACTION FILE NO. 1:09-CV-955-TWT |
| ACTAVIS, et al., | |
| Defendants. | |

**OPINION AND ORDER**

The Plaintiffs the Federal Trade Commission ("FTC"), the Direct Purchaser Class, the Individual Direct Purchasers, and the End-Payor Class brought antitrust actions against the Defendants Solvay Pharmaceuticals, Inc., Watson Pharmaceuticals, Inc., Paddock Holdings, LLC, and Par Pharmaceutical Companies, Inc. The Plaintiffs claim that the Defendants, in underlying patent lawsuits, entered into unlawful, anti-competitive "reverse-payment settlement agreements." The Plaintiffs now seek to compel the production of documents concerning these reverse-payment settlement negotiations. The Defendants claim that the documents are privileged. At a hearing

on this matter, the Court ruled that an *in camera* review of the documents was appropriate to determine whether the documents are privileged. The Court concludes that some, but not all, of the documents are privileged. Accordingly, the Plaintiffs' Motion to Compel [Doc. 377] is GRANTED in part and DENIED in part.

## I. Background

Because the facts of this case have already been presented on multiple occasions,[1] the Court will provide only a brief summary. In 1995, the Defendant Solvay Pharmaceuticals, Inc., licensed from Besins Healthcare, S.A. – the developer of the formulation for the testosterone replacement drug AndroGel – the U.S. rights to the AndroGel formula.[2] Solvay then applied for a U.S. patent in 2000;[3] a patent was issued on January 7, 2003.[4] The Defendants Watson and Paddock, in May of 2003, each filed an application with the Food and Drug Administration ("FDA") to market a generic version of AndroGel.[5] Additionally, Paddock reached a deal with Par, a

---

[1]     See, e.g., In re AndroGel Antitrust Litig. (No. II), 888 F. Supp. 2d 1336 (N.D. Ga. 2012); F.T.C. v. Watson Pharm., Inc., 677 F.3d 1298 (11th Cir. 2012) *rev'd sub nom.* F.T.C. v. Actavis, Inc., 133 S. Ct. 2223 (2013).

[2]     Second Am. Compl. ¶ 32.

[3]     Id. ¶ 39.

[4]     Id. ¶ 42.

[5]     Id. ¶ 44.

generic drug company, "to share litigation costs with Paddock, market Paddock's generic product following launch, and share in the resulting profits."[6] Solvay and Besins then filed separate patent infringement lawsuits against Watson and Paddock in August of 2003.[7]

In January of 2006, Watson received final approval from the FDA for its generic version of AndroGel.[8] By this time, both Watson and Par/Paddock were preparing for generic entry.[9] This continued until Solvay, Watson, and Par reached settlement agreements in the patent suits.[10] Under the settlement terms, Watson and Par/Paddock agreed to delay the entry of their AndroGel generics until August of 2015.[11] Through a co-promotion deal, Watson was to receive "$19 million during the first year of its agreement, rising to over $30 million annually by the end of the deal."[12] Through Par/Paddock's settlement agreement, "Par would co-promote

---

[6]     Id. ¶ 46.

[7]     Id. ¶ 47.

[8]     Id. ¶ 52.

[9]     Id. ¶ 54

[10]     Id. ¶ 55.

[11]     Id. ¶¶ 65, 71.

[12]     Id. ¶ 66.

AndroGel to doctors and receive $10 million annually, and Paddock would serve as a back-up manufacturer for AndroGel and receive $2 million annually."[13]

Based on these settlements, the FTC, the Direct Purchaser Class, the Individual Direct Purchasers, and the End-Payor Class filed suit. In their Second Amended Complaint, the Plaintiffs allege that the Defendants' "co-promotion and back-up manufacturing deals induced Watson, Par, and Paddock to agree to refrain from marketing generic AndroGel until 2015 and provided Solvay the means to share preserved AndroGel monopoly profits with its potential competitors."[14] But, according to the Plaintiffs, if the patent infringement suit had proceeded, Solvay and Besins likely would have lost, resulting in the AndroGel generics going on the market. Consequently, the Defendants' settlements prevented consumers from being able to purchase the AndroGel generics at a much lower cost than the brand-name AndroGel.

The Motion to Compel presently before the Court concerns the Defendants' privilege logs which were created in 2007 and 2008 for the FTC's investigation. The Private Plaintiffs received the logs in 2010 for the sham litigation phase. In the present discovery phase, the Plaintiffs requested "documents and communications exchanged by the parties in negotiating the settlements between February 2006, when Defendants

---

[13]   Id. ¶ 74.

[14]   Id. ¶ 81.

started settlement discussions, and September 13, 2006, when they executed the settlement agreements."[15] The Defendants responded by claiming that a common interest privilege protects their settlement discussions documents from disclosure. The Plaintiffs filed this motion to challenge the Defendants' privilege claims. On October 27, 2015, at a hearing on this matter, this Court concluded that an *in camera* review of the documents in question was necessary to determine whether the documents are privileged.

## II. Discussion

The Defendants argue that the documents in question all pertain to legal antitrust advice that was shared with the goal of preventing potential antitrust litigation. Thus, according to the Defendants, the documents are protected by the common interest doctrine.[16] "The common interest doctrine, or joint defense privilege, 'is an exception to the general rule that disclosure to a third party of privileged information thereby waives the privilege.'"[17] "It protects communications between the parties where they are 'part of an on-going and joint effort to set up a common defense

---

[15]    Pls.' Mot. to Compel, at 4.

[16]    Defs.' Resp. Br., at 1.

[17]    Carolina Power & Light Co. v. 3M Co., 278 F.R.D. 156, 161 (E.D. N.C. 2011) (quoting Mainstreet Collection, Inc. v. Kirkland's, Inc., 270 F.R.D. 238, 242 (E.D. N.C. 2010)).

strategy' in connection with actual or prospective litigation,"[18] and it applies to communications protected by both the attorney client privilege and the work product doctrine.[19] The party claiming the privilege must at least demonstrate that "(1) the material is privileged, (2) 'the parties had an identical legal and not solely commercial interest,' and (3) the communication was designed to further the shared legal interest."[20]

Here, the Defendants have established that they shared a common legal interest. The Defendants state that they were aware that the FTC and other parties would analyze their settlements and potentially file suits under antitrust laws.[21] As a result of this awareness, the Defendants entered into joint defense agreements to formulate a common legal defense with respect to potential antitrust litigation. Thus, "[the Defendants] shared the same goal: that their agreements would not lead to antitrust litigation."[22] The Plaintiffs respond by arguing that the Defendants were adversaries

---

[18]     Minebea Co., Ltd. v. Papst, 228 F.R.D. 13, 15 (D.D.C. 2005) (quoting In re Bevill, Bresler & Schulman Asset Mgmt., 805 F.2d 120, 126 (3d Cir. 1986)).

[19]     Id. at 16.

[20]     Net2Phone, Inc. v. Ebay, Inc., No. 06-2469 (KSH), 2008 WL 8183817, at *7 (D. N.J. June 26, 2008) (citations omitted) (quoting In re The Regents of Univ. of Cal., 101 F.3d 1386, 1390 (Fed. Cir. 1996)).

[21]     Minebea Co., Ltd., 228 F.R.D. at 16.

[22]     Defs.' Resp. Br., at 14.

all throughout their settlement discussions and, therefore, could not have shared a common legal interest.[23] However, several courts have held that parties negotiating agreements can share a common legal interest.[24] For example, in Hewlett-Packard Co. v. Bausch & Lomb, Inc., the court held that parties negotiating the sale of a subsidiary shared a common legal interest regarding the possible infringement of certain patents involved in the sale, despite the parties being adverse during the negotiations.[25] Similarly, here, while the Defendants were adverse during the settlement negotiations, they shared a common legal interest in formulating a defense to any potential antitrust litigation.

Having determined that the Defendants satisfied their burden with regard to the common legal interest factor, the Court will now discuss each document individually to resolve whether the document is privileged under the attorney client privilege or work product doctrine and whether it was created in furtherance of their joint legal effort.

---

[23]     Pls.' Mot. to Compel, at 12.

[24]     See, e.g., Louisiana Mun. Police Emps. Retirement Sys. v. Sealed Air Corp., 253 F.R.D. 300, 310 (D. N.J. 2008) (holding that parties negotiating a business deal could still maintain a common legal interest); Morvil Tech., LLC v. Ablation Frontiers, Inc., No. 10-CV-2088-BEN (BGS), 2012 WL 760603, at *3 (S.D. Cal. Mar. 8, 2012) (same).

[25]     115 F.R.D. 308, 312 (N.D. Cal. 1987).

**A. Solvay**

Document 3 is protected by the joint defense privilege. The document is draft terms of a co-promotion agreement between Par/Paddock and Solvay, attached to an email from counsel. The document is protected by the joint defense privilege because it concerns antitrust counsel's advice and was shared among the Defendants in a common interest.

Document 5 is a spreadsheet describing the structure of the co-promotion agreement. It is protected by the joint defense privilege because it reflects antitrust advice that was protected by the attorney client privilege and then shared among the Defendants.

Document 153 is a redacted line from an email written by Solvay's general counsel. It is protected by the joint defense privilege because it reflects antitrust advice that was protected by the attorney client privilege and then shared among the Defendants.

Document 198 is a redacted portion of an email suggesting revisions to the co-promotion agreement based on advice from antitrust counsel. Because the redacted portion of the document reflects advice from antitrust counsel that was protected by the attorney client privilege and then shared among the Defendants, it is protected by

the joint defense privilege. Document 199 reflects the same redaction as document 198 and is protected for the same reason.

Document 200 is an email with a redacted portion that reflects advice from antitrust counsel. It is protected under the joint defense privilege because it reflects antitrust advice that was protected by the attorney client privilege and then shared among the Defendants.

Document 220 is an email containing two redactions – only the second is currently at issue. That redaction reflects advice from antitrust counsel that was protected by the attorney client privilege and then shared among the Defendants and is therefore protected by the joint defense privilege.

Document 272 contains the same redaction as document 153 and is protected for the same reason.

Document 318 is an email from Solvay's general counsel to Watson's counsel regarding antitrust analysis. Because it concerns antitrust advice that was protected by the attorney client privilege and then shared among the Defendants, it is protected under the joint defense privilege.

Document 393 contains the same redaction as document 220 and that redaction is protected for the same reasons.

Document 597 is an email with redactions that relate to communications with antitrust counsel. It is protected under the joint defense privilege because it contains antitrust advice that was protected by the attorney client privilege and then shared among the Defendants. Document 693 contains the same redactions as document 597 and is protected for the same reason.

Documents 705 and 706 contain the same redaction as document 198 and are protected for the same reason.

Documents 708 and 709 contain the same redaction as document 220 and are protected for the same reason.

Documents 909 and 910 contain the same redaction as document 198 and are protected for the same reason.

Document 953 is not protected by the joint defense privilege or the work product doctrine. This is an email that simply quotes a C.F.R. section. The Court finds that any discussion here was a part of general settlement negotiations and not reflective of antitrust advice.

Document 958 is an email between counsel regarding antitrust advice with attached case law. It is protected under the joint defense privilege because it contains

antitrust advice that was protected by the attorney client privilege and then shared among the Defendants.

Document 959 is a draft joint defense agreement with comments. It is protected under the work product doctrine because it is a draft and the joint defense privilege because it was shared among the Defendants in their common interest.

Document 960 is an email regarding the draft joint defense agreement and it is protected for the same reasons as document 959. Document 961 is a draft joint defense agreement, which is protected for the same reasons as document 959.

Document 963 is a draft of a letter to the FTC and Department of Justice. It was prepared by antitrust counsel and reflects antitrust advice. It is protected under the work product doctrine because it is a draft that was prepared in anticipation of antitrust litigation and under the joint defense privilege because it concerns antitrust advice that was protected by the attorney client privilege and then shared among the Defendants.

Document 966 is an email from Watson's outside counsel to Solvay's outside counsel regarding settlement documents. It is protected under the joint defense privilege because it concerns antitrust advice that was protected by the attorney client privilege and then shared among the Defendants.

Document 967 is a draft settlement memorandum in <u>Unimed v. Watson</u>. It is protected under the joint defense privilege because it contains information based on advice from antitrust counsel and shared among the Defendants.

Document 968 is an email attaching a draft joint defense agreement and case law regarding antitrust advice. It is protected under the joint defense privilege because it contains antitrust advice that was protected by the attorney client privilege and then shared among the Defendants in their common interest. Document 969 is the attachment – a draft joint defense agreement and the referenced case law. It is protected for the same reason as document 968.

Document 970 is an email regarding a revised joint defense agreement and specifically discussing changes to that agreement. It is protected under the joint defense privilege because it concerns antitrust advice that was protected by the attorney client privilege and then shared among the Defendants in their common interest.

Document 971 is a draft joint defense agreement. It is protected for the same reasons as document 959.

Document 972 is an email from Solvay's outside counsel to Watson's outside counsel regarding a case about the FDA's ability to change the paragraph

classifications of generic drug certifications. The Court believes this email reflects settlement negotiations and not antitrust advice. Document 972 is therefore not protected.

Document 973 is an email from Watson's outside counsel to Solvay's outside counsel attaching a draft joint defense agreement. Document 974 is the attached joint defense agreement. Documents 973 and 974 are protected for the same reasons as documents 959 and 960.

Document 976 is a draft letter from Defendants' antitrust counsel to the FTC. It is protected under the work product doctrine because it is a draft prepared in anticipation of litigation.

Document 981 contains draft letters to the FTC and Department of Justice from Watson's outside counsel. It is protected under the joint defense privilege because it contains antitrust advice that was protected by the attorney client privilege and then shared among the Defendants in their common interest.

Document 983 is an email from Par/Paddock's outside counsel to Solvay's outside counsel attaching a draft joint defense agreement. Document 984 is the attached joint defense agreement. Document 983 is protected for the same reason as document 960. Document 984, however, appears to be a fully executed copy of the joint defense agreement. It is protected, like the previously referenced draft joint

defense agreements, under the work product doctrine. This protection only applies if document 984 is truly a draft. If counsel reviews the document again and determines that it is not a draft, the Court orders that document 984 be produced.

Document 985 is an email discussing updates to the joint defense agreement. Document 986 is a draft joint defense agreement. They are protected for the same reasons as documents 959 and 960.

Document 987 contains the same redactions as document 198 and is protected for the same reason.

Document 988 contains redactions in emails that relate to advice from antitrust counsel. Because the redacted portions contain antitrust advice that was protected by the attorney client privilege and then shared among the Defendants in their common interest, they are protected under the joint defense privilege.

Document 989 is an email involving edits by outside counsel to the final settlement and release agreement between Par/Paddock and Solvay. The redacted portions of the email outline legal advice from antitrust counsel with regard to the joint defense agreement and are, therefore, protected by the attorney client privilege. The redacted portions are in furtherance of the Defendants' common legal interest because they pertain to the joint defense agreement.

Document 990 is an email involving outside counsel about the final settlement and release agreement, the patent agreement, and the consent judgment. The redacted portion is protected by the attorney client privilege because it contains legal advice from outside counsel. It is in furtherance of the common legal interest because it pertains to antitrust advice and, therefore, is protected by the joint defense privilege.

Document 991 is an email involving outside counsel about the consent judgment. The redacted portion is protected by the attorney client privilege because it contains legal advice from outside counsel, and it is in furtherance of the common legal interest because it pertains to antitrust advice. Thus, it is protected under the joint defense privilege as well.

### B. Watson

Document 69 (12/31/2007 log)/70 (2/5/2008 log) is an email exchange between counsel. This Court finds that only the last email from Peter Edwards to Steven Sunshine at 4:06PM on July 10, 2006, concerns antitrust advice. That last email is protected under the joint defense privilege because it concerns antitrust advice that was protected by the attorney client privilege and then shared among the Defendants in their common interest. The rest of the emails do not relate to any joint antitrust defense and are not protected. Document 70 (12/31/2007 log)/71 (2/5/2008 log) and

document 107 (12/31/2007 log)/108 (2/5/2008 log) are extensions of that email chain. Only the 4:06PM email is protected in each of those documents as well.

Documents 111, 112, 113, 127, 139, and 141 (2/5/2008 log) all contain the same redaction as Solvay's document 597. The redaction in each of these documents is  protected for the same reason.

Document 170 (12/31/2007 log)/184 (2/5/2008 log) and document 173 (12/31/2007 log)/187 (2/5/2008 log) are draft co-promotion agreements with comments. The one redaction relates to antitrust advice that was protected by the attorney client privilege and then shared among the Defendants in their common interest and is therefore protected under the joint defense privilege.

Documents 204, 206, 208, and 209 (2/5/2008 log) are draft co-promotion agreements with comments. The one redaction relates to antitrust advice that is protected by the attorney client privilege and then was shared among the Defendants, so it is protected under the joint defense privilege.

Documents 220 and 264 (2/5/2008 log) contain the same redaction as Solvay's document 597. The redaction in each of these documents is protected for the same reason.

Document 273 (2/5/2008 log) is an email between counsel that does not concern any antitrust advice. The court finds that it is not protected because it does not concern antitrust advice.

Document 262 (12/31/2007 log)/276 (2/5/2008 log) is the same email chain as document 69/70 discussed above. Only the 4:06PM email is protected, for the same reason as discussed above.

Document 265 (12/31/2007 log)/279 (2/5/2008 log) is an email concerning a draft joint defense agreement. It is protected for the same reason as the other similar emails. Documents 267 (12/31/2007 log)/281 (2/5/2008 log), 269 (12/31/2007 log)/283 (2/5/2008 log), and 271 (12/31/2007 log)/285 (2/5/2008 log) are also similar emails and are protected for the same reason.

Documents 266 (12/31/2007 log)/280 (2/5/2008 log), 268 (12/31/2007 log)/282 (2/5/2008 log), 270 (12/31/2007 log)/284 (2/5/2008 log), and 272 (12/31/2007 log)/286 (2/5/2008 log) are drafts of the joint defense agreement. They are protected for the same reason as the other drafts.

Document 273 (12/31/2007 log)/287(2/5/2008 log) is case law referenced in an email between counsel related to antitrust advice. This is the same case included in Solvay's document 969 and is protected for the same reason.

Documents 274 (12/31/2007 log)/289 (2/5/2008 log), 275 (12/31/2007 log)/290 (2/5/2008 log), and 276 (12/31/2007 log)/291 (2/5/2008 log) are not protected. They concern FDA certification of generic drugs and are related to settlement discussions, not antitrust advice. Like Solvay's documents 953 and 972, these discussions are not protected.

Document 277 (12/31/2007 log)/292 (2/5/2008 log) contains the same redaction as document 170 (12/31/2007 log)/184 (2/5/2008 log) and document 173 (12/31/2007 log)/187 (2/5/2008 log). It is protected for the same reason.

Document 278 (12/31/2007 log)/293 (2/5/2008 log) is an extension of the email chain in document 69 (12/31/2007 log)/70 (2/5/2008 log). For the same reasons as discussed previously, only the 4:06PM email is protected.

Document 294 (2/5/2008 log) is an email attaching a draft joint defense agreement. It is protected for the same reason as the other similar emails.

Documents 295 (2/5/2008 log), 290 (12/31/2007 log)/307 (2/5/2008 log), and 308 (2/5/2008 log) are drafts of the joint defense agreement. They are protected for the same reason as the other drafts.

Document 325 (2/5/2008 log) contains the same redaction as Solvay's document 597 and is protected for the same reason.

### C. Par/Paddock

The following documents are numbered as listed on Par/Paddock's March 24, 2008, privilege log.

Documents 26, 27, 29, and 30 contain the same redaction as Solvay's document 153, and they are protected for the same reason.

Documents 58, 60, 61, 62, and 221 contain the same redaction as Solvay's document 708. Solvay's document 708 redacts only a portion of the line. That portion of the line is protected here for the same reason as in Solvay's document 708. The remainder of the line, reading "[h]owever, the generic entry date which we negotiated months ago," was already disclosed in Solvay's document 708. It is therefore not protected here.

Document 104 contains the same redaction as Solvay's document 392. It is protected for the same reason.

The following documents are numbered as listed on Par/Paddock's August 27, 2008, privilege log.

Document 5 is an email regarding a draft joint defense agreement and an attached draft joint defense agreement. The email is protected under the joint defense privilege because it relates to antitrust advice that was protected by the attorney client privilege and then shared among the Defendants in their common interest. The

attached joint defense agreement is the same as Solvay's document 984. It is protected if it is truly a draft; if not, it must be disclosed.

Document 6 is a draft joint defense agreement. It is protected for the same reasons as the other joint defense agreement drafts discussed previously. Documents 8 and 10 are emails with attached draft joint defense agreements. They are protected for the same reason as the other similar documents.

Document 11 contains the same redaction as Solvay's document 988 and is protected for the same reason.

Documents 13 and 22 are drafts of the joint defense agreement, which are protected for the same reason as the other draft joint defense agreements.

Document 23 is an email that is the same as Solvay's document 989 and an attached draft joint defense agreement. The email is protected for the same reason as Solvay's document 989. The draft joint defense agreement is protected for the same reason as the other drafts.

Document 32 is an email referencing a draft joint defense agreement and an attached draft joint defense agreement. It is protected for the same reason as the other draft joint defense agreements. Documents 73 and 75 are also emails with attached drafts of the joint defense agreement and are protected for the same reason.

Documents 56 and 78 are the same as Solvay's document 988 and are protected for the same reason.

The following documents are from Par/Paddock's July 25, 2008, privilege log.

Document 4 is an email with a redaction reflecting advice from antitrust counsel and a withheld manufacturing and supply agreement that reflects the changes based on antitrust counsel's advice. Because the redacted and withheld portions reflect advice from antitrust counsel that was protected by the attorney client privilege and then shared among the Defendants in their common interest, they are protected under the joint defense privilege.

Document 8 contains the same redaction as Solvay's document 910 and is protected for the same reason.

Document 15 contains the same redaction as document 4 from the July 25, 2008, Par/Paddock privilege log. It is protected for the same reason.

Document 18 contains the same redaction as Solvay's document 910 and is protected for the same reason.

Document 26 contains the same redaction as document 4 from the July 25, 2008, Par/Paddock privilege log. It is protected for the same reason.

Document 17 has the same redactions as Solvay's document 987 and those redactions are protected for the same reason.

Document 19 contains the same redactions as Solvay's document 392, which are protected for the same reason.

Document 36 contains the same redactions as Solvay's document 988, which are protected for the same reason.

Documents 39 and 41 contain the same redactions as Solvay's document 910 and are protected for the same reason.

Document 53 contains the same redaction as Solvay's document 708. Solvay's document 708 redacts only a portion of the line. That portion of the line is protected here for the same reason as in Solvay's document 708. The remainder of the line, reading "[h]owever, the generic entry date which we negotiated months ago," was already disclosed in Solvay's document 708. It is therefore not protected here.

Document 60 contains the same redaction as Solvay's document 989 as well as an attached draft joint defense agreement. The redaction is protected for the same reason as in Solvay's document 989. The draft joint defense agreement is protected for the same reason as the other drafts.

Document 61 is a draft joint defense agreement. It is protected for the same reason as the other drafts.

Document 62 is an email between counsel which contains a redaction of statements related to antitrust advice. Because the statements relate to antitrust advice

that was protected by the attorney client privilege and then shared among the Defendants in their common interest, they are protected under the joint defense privilege.

Document 63 contains the same redaction as document 4 from the July 25, 2008, Par/Paddock privilege log. It is protected for the same reason.

Documents 68 and 71 contain the same redactions as Solvay's document 910, which are protected for the same reason.

Documents 75 and 82 are emails with attached draft joint defense agreements. Document 75 is protected for the same reasons as the other similar documents. Document 82 (Solvay's document 984) is protected so long as the document is truly a draft and not an executed joint defense agreement.

Document 91 is an email with the same redactions as Solvay's document 989 as well as an attached draft joint defense agreement. The redaction is protected for the same reason as in Solvay's document 989. The draft joint defense agreement is protected for the same reason as the other drafts.

Document 92 is a draft joint defense agreement, which is protected for the same reason as the other drafts.

Document 93 contains the same redaction as document 62 from the July 25, 2008, Par/Paddock privilege log. It is protected for the same reason.

Document 94 contains the same redaction as document 4 from the July 25, 2008, Par/Paddock privilege log. It is protected for the same reason.

Document 117 contains the same redaction as Solvay's document 987 and is protected for the same reason.

### III. Conclusion

For these reasons, the Court GRANTS in part and DENIES in part the Plaintiffs' Motion to Compel [Doc. 377].

SO ORDERED, this 30 day of December, 2015.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge